The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Stegman presiding. Thank you, Mr. David. Our case this morning is 424-1361. Christina Loepkes, that's pronounced correctly, versus Susan Goodall. Would the counsel for the appellant please state your name? Good morning, Justices. Patrick Bruce for Christina Loepkes. Okay, thank you. And counsel for appellee, please state your name. Well, good morning. Most on behalf of the appellees, Susan Good and Tony Good. Thank you, Mr. Bruce. On behalf of the appellate, good afternoon, sir. Thank you, Your Honor. May it please the court, counsel, this is an appeal of an action in which is, frankly, a fairly unusual or uncommon claim in civil court. So, I'd like to start off by laying out the foundation, the legal framework behind what detenue is. It's a common law remedy, the gist of which is that the defendant is wrongfully in possession of personal property belonging to the plaintiff. Here, the personal property or chattel, as it were, is a Labrador puppy named Peanut. A finding for the plaintiff is proper in detenue when it's established that the right to possession of the property of the plaintiff is superior to that of the defendants. If a plaintiff is successful in an action in detenue, then the chattel, in this case, the dog, must be returned to the true owner, in this case, Christina, or its value if it's not recoverable. Upon information and belief, the dog is alive and well, so that would be our request on appeal. Notably, I'd like to acknowledge that the courts in case law treat detenue very similarly to replevin. In replevin, once a plaintiff makes a prima facie case to lawful entitlement to the property, wrongful possession by the defendant, and then a refusal to return the property, they make that prima facie case. The burden then shifts to the defendant, where if the defendant claims ownership as a gift, they're required to approve by clear and convincing evidence, donative intent, the donor's parting with exclusive dominion control over the subject of the gift, and delivery to the donee. Noteworthy, donative intent is determined at the time of the alleged transfer of the property, and it's controlled by what the parties said or did at the time of the transaction, not what's said or done later in time. In this case, there's going to be statements and arguments about what was said or done before the time of delivery, but the point is donative intent is determined at the time of transfer. At the trial court level, the appellant, and if I may, I'll refer to her as Christina and plaintiff at times, is seeking the return of Peanut, the labradoodle puppy, from the defendants, the goods. The trial court found in favor of the defendants and against the plaintiff. On appeal, we're arguing that the trial court's decision was against the manifest weight of the evidence, which of course means that if the appellate court finds that the opposite conclusion was apparent and or the trial court's findings were unreasonable, arbitrary, or not based on the evidence, then the appellate court should reverse and remand. At the trial court level, the judge basically boiled down and oversimplified, in my humble opinion, its decision as to whether or not Christina gave Peanut to her daughter. I want to raise about this. I don't think there's much dispute on this record about what Christina said to her daughter, Nicole, and what her intention was when she transferred the dog, namely telling Nicole, if you're going to give up this dog, you should, I'm not going to keep it, you should give it back to me. And Nicole, if I understand this record correctly, said, yeah, that's what she said. The question is, on this record, whatever this is there, that Nicole assented to that condition. I mean, she's testifying at trial. Christina, or she had a lawyer, which would have been a good thing, could have said, did you agree to that condition, Nicole, when you took the dog, or did you say, no, I don't agree to that? But isn't it correct that we don't have any answers to that question on this record? Your Honor, I would state that we do have an answer to that question. And looking, as quoted in my brief, in the record, page 31, lines 3 through 12, Christina was speaking and questioning her daughter on the record. So, Nicole, you're saying that you never agreed to return Peanut to me when you had issues, if you couldn't take care of her. Nicole, you did ask me to, but I just didn't think that was a good environment for her. She would have, at the time, would have been number seven. And it's just, I love you, Mom, but that's just too many dogs. So, I asked and you agreed, correct, which is why I let Peanut go with you? I guess so. So, and then it goes on. So, after you agreed to return her, you changed your mind without letting me know? Well, she was my dog. You gave her to me. I wanted what was best for her. Then, Christina, but you just said that I asked you to return her. I told you you had to return her and you said that you agreed. Yes, but you gave her to me and then made a comment about fully relinquishing ownership. So, I would argue to the justice today that that was an affirmative response to acknowledging, understanding, and agreeing to those conditions. Well, it's, you're right that it's something, but it seems to me the trial court, having seen and heard all this testimony, could evaluate these witnesses in this testimony to determine were these remarks of Nicole a clear assent to that condition. And I'm not sure, maybe I would have thought so as a trial judge, but how can we conclude that the trial judge here, given our deference to trial judges' determinations of testimony and what it means, was an error? Well, so we do have the record that, you know, the trial court's making the decision on the fly. And so, we have what her statements were, but we have the benefit of hindsight. We can review the record. And so, those statements, in my opinion, are clear. And furthermore, in the trial court's decision, she even acknowledged, and this is one of the more important aspects of our argument that was the manifest weight of the error, or manifest weight of the evidence, was that she said whether or not Nicole stated that she would give the dog back, it doesn't negate her ability to do with the dog as she wished. So, she almost, in the court's decision, had that be irrelevant as to whether or not the daughter assented to. And I believe that is an error because I don't believe it's in dispute on appeal that Illinois does recognize and enforce conditional gifts. And as part of that analysis, what was the donative intent? And so, we have the clear and unequivocal testimony, confident testimony of Christina that, you know, she had the dog since February, since it was a week old, named it Peanut, took care of it. Her daughter moved out of the residence in April. Nicole testified to that, was not living with Peanut for April, May, June, and most of July. That Nicole then came back to South Beloit from Rock Island, and there was a discussion about whether or not Nicole would take Peanut down with her down to Rock Island. And Christina testified that, you know, her daughter has anxieties, and that she thought that she could benefit from an emotional support type of animal, but she would let the dog go with her on those conditions. And then, of course, Nicole agreed. And the whole case of plaintiff is dependent, is it not, on the assent of Nicole to the condition? Well, Nicole didn't assent, you've got no case. I think, you know, it's circumstantial evidence, you know, so if the court were not to be convinced that that was clear assent by Nicole, you can look at circumstantially, was there assent? And we have the clear and unequivocal testimony of Christina. We have the transferring. So let me be clear, again, if by way of example, Nicole said, no, I don't agree to that condition, and Christina turns the dog over to her, you'd have no case, right? I'd push back a little bit again, Your Honor, because the focus is donative intent, and that's on the part of the donor. You have to have the person receiving the gift, her agreement to the condition, for that condition to be part of the gift, do you not? I guess at its core, sure, I'll agree with that, Your Honor. Well, then it seems to me it's a question of fact for the trial court, given what was said and how it was said, the circumstances under which it was said that she assent. And, you know, this is one of those moments where this is kind of a binary thing. Did you agree to that condition when you took the dog, Nicole? Yes or no? Yes, I think would have resolved this case, and no would have resolved it, but we have kind of a jumble of words leaving it up to the trial court. Well, I respectfully don't believe there's a jumble of words. There was one pressed, she said, I guess so, and then when pressed again, she said yes. She made a legal conclusion that by mere transfer possession of the dog, then it was hers to do with. So I would state that, and further, with the benefit of looking at the transcript and all the evidence, including, you know, for example, that it was Christina who took care of the dog, took the dog to the veterinarian on two occasions, was responsible, got it vaccinated, spayed, registered in her name with the Winnebago County Animal Services. These are all indications that the dog was not always meant for Nicole. And her credibility is at issue because at the outset of her testimony, I believe she stated that the deal was that was always that when she moved to Rock Island, that she would take the dog with her. Well, that didn't occur. So she moved in April, did not take the dog with her, as she said was part of the deal, waited four months, and then the decision was made, at which point the donative intent can be ascertained. And I think in that factor of the intent of the donor, this isn't a breach of contract case. So it's the analysis wouldn't be offer acceptance consideration. So while I believe, Justice Seidman, you made very valid and good points, I guess I would back away from it entirely rests on whether or not the testimony of Nicole was yes or no. I think it's more the intent of the donor, which I think is clear. How relevant to your analysis is it, counsel, that Nicole divested herself of the dog within a couple of days of obtaining it? I think that's strong because that goes to, again, the trial court judge didn't even analyze donative intent. It was a matter of, was the dog given to Nicole? And she supported that analysis that the dog was always sort of meant for Nicole. And the fact that once she actually obtained possession of the dog, and then within four days relinquished shows that she never acted or considered herself to be the dog the whole time. And circumstantially, I do find it odd that, you know, within four days, the goods drive three hours down and then three hours up. And one day, on the fourth day, I believe that this transaction between Nicole and the goods took place well before that, potentially even before Nicole took possession of the dog. And because, you know, Nicole testified that she knew that the goods were actively looking for a dog, that they had hypo, they needed a hypoallergenic dog because of allergies within the household. And then, you know what, my mom has a seventh dog. She doesn't need seven dogs. She already has six. Here's this Labradoodle designer puppy. And then, you know, sure enough, within four days, the transfer takes place. So we didn't really make this argument because you don't like to cast aspersions, but I do believe there's a cloud of bad faith here. And that potentially that this was by design. And that Christina basically was duped into giving the dog to her daughter, who then set up her aunt and uncle. And this is corroborated by the reaction of the goods because the appellant, Christina, acted responsibly. The dog was given to the goods on Thursday. She learned of it Friday. She immediately told her daughter, look, that's a mistake. You know the deal. You were supposed to correct this. She didn't. And then by August 1st, Christina texted the goods. Politely, it's in evidence. You know, there was a big mistake. I'm really sorry about this, but the dog's mine. You know, I need it back. No response. You know, if you were really an innocent, this wasn't a commissary, a transaction in commerce, so they didn't purchase the dog. But if you received a dog and then quickly found out that that was an error, what you don't respond. And then she texts again the next day, August 2nd. And then their response is, oh, I'm really sorry about that. Are you sure? You know, you know, can we please have the dog? No. It was, don't talk to me about this anymore. And then that same day, they go and register the dog in Wisconsin, rename the dog. And that's not appropriate behavior. And that indicates circumstantially that they weren't truly innocent, bona fide receivers of the dog. And so I think those work in favor of the appellant in terms of who the actual true owner of the dog is and who has a superior right to possession. I'm also wanted to emphasize that during this argument that, yeah, at this point in time, the goods have had the dog for over two years. And there's a good chance that the dog is happy and healthy, but the appellant shouldn't be penalized for operating within the law. You know, she wasn't belligerent. There was no evidence of expletives. She didn't drive up to Eagle, Wisconsin and make a scene. She did it by through a daughter, which failed by text, which failed. Then she appropriately contacted the police to investigate. They basically determined it was a civil matter. And then she resorted to filing a lawsuit, which then took several months to play out. And now it's on appeal. And so it's unfortunate it's gotten to this state, but it was never Christina's intent to give Nicole the dog and then she could do with as she wished. You know, it's similar maybe to a parent giving their son or daughter a car to use while in college. And then the son or daughter goes sells the car. They have possession of it, but it was conditional possession that when they no longer needed it, they would return it. And so, you know, having said that, if the courts acknowledge that conditional gifts exist in Illinois and as a condition subsequent, the conditions were satisfied, I should also emphasize before my time's up that, you know, there shouldn't be an argument that the conditions were ambiguous or not understood. Nicole testified point blank that the dog was too hard to handle. She wasn't potty trained, had anxiety when she was in the shower. So she admitted that she satisfied those conditions. And when that occurred, her possessory interest terminated and therefore she didn't have any authority or quasi title to the dog to then give away. And in Illinois, you can't sell or give away something that you have no ownership interest in. And likewise, you can't obtain or purchase an ownership interest in from someone who doesn't have any. And that's the case here. So my time's winding up. And I'd like to conclude respectfully that, you know, the appellant asked this appellate court to find that the trial court's decision was against the manifest weight of the evidence and should reverse her man and enter a directive ordering the return of finally back to Christina. Thank you very much for your time. Great. Thank you, counsel. Mr. Corey, is that pronounced correctly? You may miss your argument at this time, the affidavit. Thank you, justices. Thank you, Attorney Bruce. So I'd just like to address some of the issues that Attorney Bruce brought up in his argument. One of the things that was brought up was that this was potentially done by design. This was planned well in advance of the transaction between Nicole Lucas and the goods happening. Well, that never really came into evidence. That wasn't even an argument that was presented by the plaintiff at trial. I don't think that was really an argument that was presented in the briefs. This is more an issue of whether Christina Lucas gave the dog to Nicole Lucas, and that was a valid transfer if there's a condition attached to it. The whole issue about whether this was done by design or in bad faith, I don't think that's really on appeal here. Now, this condition subsequent that was potentially attached to this dog, first of all, I think there's some issues with that. This dog was initially being fostered by Christina Lucas. Nicole Lucas testified that this dog was always going to be met for her, that she went on a trip to visit her dad in another state and told her dad that this is going to be my dog or this is my dog. I think the testimony established that when Nicole Lucas was living with Christina Lucas, that she considered the dog to be hers. Christina Lucas was helping out, but she still considered it to be hers. This potential condition that was attached to this dog of basically, if you don't want the dog, give it back to me. I think the trier effect or the judge was in the best position to evaluate this condition, whether Nicole Lucas assented to it, which in the full transcript, if you review it, there's never a clear assent to it. There's, I guess so's, yes, and the questions that are being asked of her by Christina Lucas are compound questions. For instance, so I asked you and you agreed, correct, which is why you let Peanut go with you, I guess so. What is she exactly saying, I guess so to all of it, to part of it. The problem here is that there was never a clear question of, I gave you this dog on the condition that you would give it back to me if you didn't want it. And Nicole Lucas would say either yes or no. That never happened here. There was this equivocating that was occurring during this testimony. Nicole Lucas herself never testified once that I was given this condition that I have to return the dog if I did not want it. Now this condition itself, I think there's actually issues with it. It's a condition that can almost technically never be satisfied. So it's a condition that if you don't want the dog at some point, give it back to me. There's no time limit on it. There's no when this would happen. Let's say Nicole Lucas never gave this dog away and she had it for 10 years and decides I can't have this dog anymore. Things in my life have changed. Is she supposed to give it to her mom 10 years from now? What if Christina Lucas is seriously sick at that point? She can't have another pet, but she wants it back because that was the condition. It doesn't make sense. Common sense-wise, it doesn't make sense. This is a condition that just simply put is going to attach to the gift forever. It's not a condition subsequently. It's a condition perpetuity. Some of the case law that we talked about, those are gifts that could be completed at some point. Someone had to do something to complete the transaction. This was a transaction that could technically never be completed. So was this a gift? Was this being borrowed? Was the dog just there for a specific time frame? None of that was ever established by Christina Lucas. I think what was clearly established, though, is Nicole Lucas testified that this was my dog. I fully believed it to be my dog. She never testified about once there being a condition on this dog. If there was some testimony about a condition, at most, it appears to be maybe an offer from Christina Lucas basically saying, hey, if you don't want the dog back, you know, you can give it back to me. But there was never a clear assent or clear testimony to establish it. If this dog is not, if you do not want this dog anymore, you said you would give it back to me. That never occurred once in this trial, judges. And I think the trial was in the best position to evaluate. Oh, go ahead. Oh, I'm sorry. I thought you were saying. No, I am. Mr. Bruce made the argument that it's the donor's intent that is really important in this case and not what Nicole believed as far as ownership of the dog. How do you respond? Well, yeah, if you were looking at the elements to meet the donor's intent, it's the donor. Well, I think the donor's intent is the main thing that's in argument here. Now, the donor part of control with the gift, that's clear by her giving the dog away and the daughter moving to Rock Island. There was delivery of the gift. A donor's intent, that's being challenged here. Now, I think the donor's intent was for Ms. Lucas to give this gift to her daughter. The issue is a condition attached to it. I don't believe there was a condition attached to it. I don't believe there was a proper mechanism for establishing that there was a certain condition on it. The condition to me seems at most to be an offer. There was never any testimony by either Nicole Lucas or Christina Lucas prior to going to Rock Island. Christina told Nicole, listen, I'm giving you this dog on the condition that you give it back. They talked about this potential, give the dog back to me at some point if you don't want it, but there was never foundation or testimony as to when this conversation occurred, how it occurred, did it occur before going to Rock Island, did it occur right when they got the dog. That was made very unclear in this case. I think that's the main issue that Nicole never thought there was a condition of this. And there was the intent at the whole time was to give the dog to her. And I think Ms. Lucas' intent at the time was to give the dog to her. Now, there is... Didn't Nicole have the dog before she turned it over to the group? She testified she had it about a week or so. So, it was not long. She did have the dog while she was living with her Christina Lucas. There was some testimony that Christina Lucas was helping take care of it. But at the time she was living with her mother, she also had possession of that dog. And she also did testify that the goal at the whole time when they started fostering this dog was for her to take it. And I think... What inference could the trial court or this relatively short time after receiving it from Christina, inference pertaining to whether Nicole agreed to the condition that Christina was to establish on the gift of the dog? Well, you know, the fact that she only kept the dog for a couple days, I think is not really relevant in this situation. Because there was never a time frame established by the parties about, hey, okay, if you can only have the dog, we're going to go on a week-by-week basis and see how this dog is doing. It's here. You can have the dog and you're moving to Rock Island. Again, there's some debate about the condition. But the fact that she only had the dog for a couple days, I don't think matters in this situation. There was no testimony or evidence about the fact that there's another condition about a time limit in terms of, okay, we're going to do this on a week-by-week basis. That was never established at trial. So the fact that she only had it for a couple days, I don't think affects the fact that there was a gift given to my client for her to keep and she could do what she wanted with it. If the evidence has shown that Nicole was specifically asked, did you agree to accept the dog on the condition that if you couldn't keep the dog, you'd return it to Christina? And she said, yes. Would that be the end of your case? No, I don't. Well, I think it certainly refers to my case, but do I think it's the end of the case? No, because I think this condition overall is still unenforceable. It's a condition- Well, if it's a condition that Christina wishes to attach to the gift and your client said, okay, I accept that condition, why is it unenforceable? Well, because I don't think it's truly a gift at that point. I mean, there has to be some type of end point to a condition. A condition can't just last the life of the property itself. Again, the case law that we talked about was one of the conditions was for the son to graduate school and have good behavior during school, or one of the conditions was that they would get married for giving the engagement ring. This was a condition that would just never end. At some point, that condition kicks back in. It can never be satisfied. So I think there's a lot of issues with the condition itself in terms of how it was proposed, the logistics of it, just the overall self of how do you enforce something like that. And that's what I think is the main issue, or not the main issue, but another issue with this. Okay, we find that there is a condition can be accepted that that's a gift. Is there going to be a condition on gift for the entirety of its lifespan? Because even though dogs are considered property under Illinois law, they do have a lifespan. They at some point will pass away. That's a condition that lasts a whole lifespan of the animal. So I think it's unenforceable on its face itself. But to go over some of the other conditions, I don't think there is a real debate about whether in terms of the transfer from Nicole to the goods, and that the goods exercise ownership over this animal. I think that's pretty clear by their testimony that they've exercised ownership over the animal. It's more so about this potential condition, whether it was a condition that existed. Again, I think the condition itself is very unclear as to when it was stated, if it was stated, how it was stated by Christina Lucas. Clearly, it was never a written condition. There was never any testimony about when this condition was made. Was it made before going to Rock Island? Was it made right when they got the animal? Did they have a sit down conversation on such and such date? That's never clarified at trial. So I think that's what part of the court was considering. And again, this is a very high standard that we're dealing with. It has to be unreasonable, arbitrary, or not based on evidence. And I think the court had enough ample evidence to see that this was a valid transfer that Christina Lucas transferred the dog to Nicole. Now, maybe she had some regrets later. And that could have been based on the fact that she transferred the quickly after four days. And maybe that did upset her. But that doesn't matter because prior to that, there was no time frame set. And another issue that kind of came out in trial was that the goods were previously related to Christina Lucas. I think she was her ex-sister-in-law. So maybe she was unhappy that the fact that this dog was given to an ex-family member. That wasn't made completely clear at trial. But that could have been a reason why that she was upset about what occurred after learning that it had been given to the goods. But again, this condition itself, I just think it, I think the case on looking at it in space, it just is unclear in terms of how you enforce a condition like that and when it was stated and how it was stated. And, you know, Christina Lucas... What's unclear about if you don't want the dog, I'll take it back. Well, I think what was unclear was how this conversation came about because... Okay. No, I'm not disagreeing with that. That's really the reason we're here is because that didn't get made clear in the trial. But you made a statement that the condition itself was unclear, not that the conversation about the condition is unclear. So I'm trying to find out what's unclear about if you don't want the dog, I'll take it back. You know, I should maybe revise that. I don't think that condition itself is unclear. Okay. If you don't want the dog, then yes, she's asking for a bet. I think more so in terms of how this condition came about was unclear and also the enforceability of a condition that just stays in the life of the animal. So those are the main issues. But the actual... Okay, we're kind of back to the original statement then. You're saying that there's something else that makes this statement itself unclear. If the statement is, if you don't want the dog, I will take it back. Is that unclear? No, I think it's unclear in the sense of how long this condition lasts for. Is it going to last for, okay... It lasts until she doesn't want the dog. If that's so, so 10 years from now, let's say she doesn't want the dog and her mom wants it back, are we supposed to say, well, she'll have to give it back to your mom now. What if her mom is in a different state or is not in... That's a whole different matter. We're just talking about the legal question. I think that's the issue because the case law talks about conditions that are very clear. If you're going to get, if we're getting married, you can have this engagement. They're not getting married anymore. Or if you go to school and graduate, then you get to keep the car. This is a condition that it just lasts. It never ends. You can never truly satisfy it. To the extent that there's a question about the length of the condition, that question doesn't exist in this case because it was two weeks later. And that's true. I'm just talking about overall in terms of the mechanics of making the condition to begin with. They never discussed a timeframe. And I know the facts are different in this case, because it was only about a week until the next transfer to approve. But I'm just speaking more overall in terms of if you make a condition like that on a property, how do you enforce it going forward? In terms of maybe she decides to keep the dog or she keeps it for years and then all of a sudden she doesn't want the dog. What do you do at that point? I guess you can give it back, but the circumstances could potentially be changed at that point. But that's not relevant to the legality of the gift. The conditions subsequent don't determine the legality of the gift itself. The condition subsequent might affect how it's effectuated. But you're talking about subsequent conditions somehow relating to the legality of the gift itself, and I don't believe that's correct. Well, I think the Rickey case was somewhat discussing this in terms of looking at the how would it be completely enforced? So let me just pull it up real fast. Rickey versus Rickey, it was a father who gave the son a car. The father took it away, claiming it was a conditional gift and the son sued for it back. The father claimed the son had failed to continue school and had not continued his good behavior. And the appellate court found out that there was no evidence to demonstrate that the son had dropped out of school or that there was good behavior. So the appellate court itself had issues with the condition that was imposed and how to basically evaluate that. That's a condition with a number of variables to it. This is pretty straightforward. If you don't want the dog, I'll take it back. That's it. It doesn't say unless you get a job, unless you finish school, and there are no other conditions attached. It's just if you don't want the dog, I'll take it back. I'm still trying to figure out what there is about that that makes that a difficult condition to enforce. Go ahead. I'm sorry. So the actual statement itself, I agree, is very straightforward. I think just in terms of being able to enforce that condition going forward makes it almost an impossibility. So the actual condition of if you don't want the dog, give it back to me, that statement itself on its face, yes, it's clear. But in terms of going forward and evaluating it and managing a condition like that, I think that's where the issues start to really present themselves in this case. Anyway, I don't want to take any more of your time. Go ahead. No, that's okay. I don't have too much to add other than to say that, again, the court considered all the evidence. I know counsel takes some exception to how she ruled on the case, but she was there. She heard Nicole Lucas's testimony. She evaluated it carefully. There was never a clear assent to this condition. I think that's a major issue in this case. There's never any real testimony evidence as to when this condition was presented, how this condition was presented, and Nicole Lucas clearly testified that she believed her mom or that her mom had relinquished this dog back to her. She believed it was fully hers and she had the full ability to transfer that dog to anyone else who wanted. So I think this court should, this federal court should affirm the child court's ruling. Thank you. Okay, thank you, counsel. Mr. Bruce, any rebuttal, sir? You're muted, Mr. Bruce. I apologize. Thank you. Briefly, Your Honors, with regards to the argument that there was no timeline in place makes this condition unenforceable. First of all, the most common conditional gift is the engagement ring. People can be engaged until they die, but as soon as that engagement is over, then the person who gave the engagement ring, typically the man, can get the ring back. And so there's no time limit involved in that conditional gift analysis. Further, the case cited by Defense Counsel Buxkowitz v. Lubin regarding the show dog where the owner, Buxkowitz, signed Mrs. Lubin as a co-owner, the courts acknowledged that that arrangement also did not have a time limit, and that had no bearing on whether or not that affected the conditions of the transaction. Further, I'd be remiss if I didn't point out that this is a civil cause of action. The burden is by a preponderance. It's not beyond a reasonable doubt. And with the donative intent, you look at the time of the transaction, what was said or done by the parties. There is no denial that Christina made those conditions verbally at the time of transaction. The courts can infer that the trial court felt that Nicole's responses on the stand were equivocal and were not totally affirmative. I respectfully disagree with that. But then you have, once you have Nicole acknowledging that her mother did make those conditions, and Christina stating that she did as well, then you have the transfer of the property. That's corroboration that there was an understanding in a sense. And that's just- It sounds like a fine question. The panel before whom you are arguing are trial court alumni, and we're very deferential to trial courts' assessments of witnesses and facts and inferences to be drawn. And we are all keenly aware of how much better the trial court's view is of all that than ours. Essentially, you're asking us to find that the trial court in this case made a mistake, that its judgment was contrary to the evidence and whatever the standard is. To conclude, there was an unreasonable judgment on the evidence before the court. How can we make that determination from this record? Well, the trial court, so there's been a lot of discussion about whether or not Nicole assented to those conditions, right? In terms of does that make or break the case? The court said whether or not Nicole agreed, it doesn't matter. That's against the manifest way to the evidence, because that's placing no importance on the assent. Where and in what context did the court say that? In her verbal decision at the end, and it would be the record page 52 through page 54, and I'll find it really quick. She states, Nicole Lucas believed she was her dog. She got a tag that indicated that she was the owner of the dog. And I think that being the case, I think whether or not she told her mom at one point that she would give her back, I don't know. I don't think that negates that it was her dog and her dog to do with as she wished and give away as she wished. And so the court is saying, even if Nicole assented to those conditions, it doesn't negate that she could do with the dog as she wished. And so I think that is reversible error, Your Honor. And then I'll finally conclude with that, because these cases are similar to Replevin, once the plaintiff establishes her prima facie case, then the burden does go to the defendants to show by clear and convincing evidence that it was an unconditional gift. And when you have Nicole stating, I guess so, and yes, I mean, it's hard to say that that was clearly and convincingly a negative, a no, especially when you have the other evidence. My time is basically up, Your Honor, and I respectfully thank you for your time and patience this morning, and ask that the appellate court reverse the trial court's decision. Thank you. Thank you, counsel. The court will take the matter under advisement, as you would envision in due course, and we'll stand now and recess.